IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL MOSIER, )<br>)<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>      Defendant. ) | Case No. 10-0795-CV-W-ODS |

### ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION AND REMANDING FOR CALCULATION AND AWARD OF BENEFITS

Pending is Plaintiff's request for review of the Commissioner of Social Security's final decision to the extent it denies his application for disability and supplemental security income benefits. The Commissioner's decision is reversed, and the case is remanded for calculation and award of benefits.

Plaintiff was born in October 1974, has a high school diploma, and has two years of training in electronics. He alleges he is disabled due to a variety of mental ailments. The ALJ determined Plaintiff satisfied the requirements for Listing 12.04 on and after June 22, 2007, but not before. Plaintiff challenges the finding that he was not disabled, and the subsequent denial of benefits, for the period between August 16, 2004 and June 21, 2007.

The Court previously observed a seeming inconsistency in the ALJ's decision Specifically, "[t]he Court's review of the Record failed to unearth a reason why Plaintiff was disabled on June 22, 2007, but not before. Plaintiff's condition before and after that date appears to be the same, leaving the Court to suspect that if Plaintiff was disabled after June 22, 2007, he was also disabled before that date." Order dated March 1, 2011. The Court solicited additional briefs from the parties to address this issue. After considering the parties' arguments and re-reviewing the Record, the Court is still of the opinion that Plaintiff was disabled before June 22, 2007.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

The Court's initial impression remains: there is no apparent difference between Plaintiff's condition before and after June 22, 2007. The Commissioner has not suggested, and review of the Record does not reveal, any reason why the ALJ's decision for the two time periods should be different.

Examination of the Record reveals substantial confirming evidence. A claimant satisfies Listing 12.04 if (1) both subsections A and B are satisfied, or (2) subsection C is satisfied. Here, both subsections A and B are satisfied. Subsection A requires "[m]edically documented persistence, either continuous or intermittent, of" either depressive or manic syndromes. The depressive syndrome must be characterized by "at least four of the following:"

    a.    Anhedonia or pervasive loss of interest in almost all activities; or
    b.    Appetite disturbance with change in weight; or
    c.    Sleep disturbance; or
    d.    Psychomotor agitation or retardation; or
    e.    Decreased energy; or
    f.    Feelings of guilt or worthlessness; or
    g.    Difficulty concentrating or thinking; or
    h.    Thoughts of suicide; or

    i.  Hallucinations, delusions, or paranoid thinking.

Subsection B requires two of the following:

    1.  Marked restriction in activities of daily living; or

    2.  Marked difficulties in maintaining social functioning; or

    3.  Marked difficulties in maintaining concentration, persistence, or pace; or

    4.  Repeated episodes of decompensation, each of extended duration.

  In January 2004, Plaintiff was brought to a hospital in Ohio by a friend because he "wasn't feeling right." Plaintiff reported feeling like he was "out of his body" and he was observed to be "staring wide open . . . without blinking. At times almost catatonic like." R. at 167. He was referred for a psychiatric evaluation, where he reported hallucinations. His GAF was 10. He was discharged to his parents' care against the hospital's recommendation because Plaintiff "was known to be struggling and psychotic." R. at 177-78. Plaintiff's parents admitted him to Two Rivers Psychiatric Hospital in Kansas City, where it was noted that Plaintiff seemed to be suffering from "manic type behavior" marked by "high functioning, elevated energy level, sleeping very minimally, and . . . racing thoughts where he could not slow his brain down." Plaintiff's past was also marked by episodes of paranoia and extreme suspiciousness. Plaintiff was discharged in February after being prescribed Lithium, Wellbutrin, Zyprexa and Haldol, under the belief that Plaintiff was doing well on those medications. R. at 202.

  With this background in mind, the events commencing in August 2004 – the month of his alleged onset date – have more meaning. Plaintiff was admitted to the Medical Center of Independence through the emergency room, where he was physically and chemically restrained because he was combative, agitated, and uncontrollable. He exhibited rambling speech, racing thoughts, incoherence, and was screaming and crying. He was admitted again to Two Rivers for two days, at which time he entered outpatient treatment. The original diagnosis of bipolar disorder was amended to include a schizoaffective disorder. In November 2004, Plaintiff began receiving treatment at Tri-County Mental Health Center, where he was treated by Dr. Mark Cannon. Despite being under Dr. Cannon's care, Plaintiff was admitted to North Kansas City Hospital because he was confused and paranoid and had not eaten for days. Plaintiff moved out

3

of the area but continued receiving treatment; however, he continued to exhibit behavior that was erratic, agitated, paranoid, and delusional. In July 2007, Plaintiff's parents involuntarily committed him to Western Missouri Mental Health for approximately one month, and thereafter, Plaintiff's sister was awarded guardianship over him.

It may be that the ALJ determined the involuntary commitment was a defining point that supported a finding of disability. If this is the case, then the finding Plaintiff's disability did not commence until then is unsustainable because Plaintiff's condition before and after that event was the same. Plaintiff's condition did not worsen, deteriorate, or otherwise change – so there is no basis for holding that Plaintiff was not disabled until his parents committed him.

The ALJ also discounted Dr. Cannon's opinions, particularly those reflected in a Medical Impairment Questionnaire he completed. R. at 425-28. Generally speaking, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). The ALJ did not defer to Dr. Cannon's opinions because they were inconsistent with statements indicating (1) Plaintiff responded well to medication and (2) Plaintiff was interested in working. These observations are a poor basis for discrediting Dr. Cannon. Considered as a whole, Dr. Cannon's notes reflect a preliminary belief that medication was working. Subsequent reports and events quickly demonstrated that any salutary effect was brief at best. Furthermore, while Plaintiff wanted to work – and while Dr. Cannon did not indicate Plaintiff could not work – this observation has little relevance when considering whether a claimant meets a listed impairment. A person whose condition meets a listed impairment is disabled, even if that person can or desires to work. In addition, as with the efficacy of medication, Dr. Cannon's statements that Plaintiff should work if he could provide little basis for discounting his opinions about Plaintiff's condition.

The substantial weight of the evidence demonstrates Plaintiff met the requirements of Listing 12.04 on August 16, 2004. The Commissioner's final decision denying benefits from August 16, 2004, to June 21, 2007, is reversed. The case is

4

remanded with instructions to calculate and award benefits from August 16, 2004, to June 21, 2007.

IT IS SO ORDERED.

                                                  /s/ Ortrie D. Smith
                                                  ORTRIE D. SMITH, JUDGE
DATE: April 26, 2011                      UNITED STATES DISTRICT COURT